E-FILED
Thursday, 07 February, 2008  02:57:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA and the
STATE OF ILLINOIS,

        Plaintiffs,

    v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,
THE URBANA CHAMPAIGN SANITARY
DISTRICT, and
CEDA, INC.,

        Defendants.

CIVIL ACTION NO.

**CONSENT DECREE**

# TABLE OF CONTENTS

I.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.     STATEMENT OF PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.    PAYMENTS BY THE SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . 7

VII.   TRUSTEE-SPONSORED NATURAL RESOURCE RESTORATION PROJECTS . . 10

VIII.  COVENANTS NOT TO SUE BY THE PLAINTIFFS . . . . . . . . . . . . . . . . . . . . 11

IX.    RESERVATION OF RIGHTS BY THE PLAINTIFFS . . . . . . . . . . . . . . . . . . . 12

X.     COVENANTS BY THE SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . 14

XI.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . . . . . . . . . . . 15

XII.   NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

XIII.  APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XIV.   EFFECTIVE DATE AND RETENTION OF JURISDICTION . . . . . . . . . . . . . . 18

XV.    CONSENT DECREE MODIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XVI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . 19

XVII.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XVIII. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Secretary of the
United States Department of the Interior ("DOI"), and the State of Illinois (the "State"), by and
through the Attorney General of Illinois, on behalf of the People of the State of Illinois, and at the
request of the Illinois Department of Natural Resources ("IDNR") and the Illinois Environmental
Protection Agency ("IEPA"), filed a complaint it this action pursuant to Section 311(f) of the
Clean Water Act, 33 U.S.C. § 1321(f) ("CWA Section 311(f)").

B.      The Complaint filed by the United States and the State (collectively, the
"Plaintiffs") alleges that the defendants that have entered into this Consent Decree (the "Settling
Defendants") are liable under CWA Section 311(f) for costs of restoration or replacement of
natural resources damaged or destroyed as a result of the discharge of a hazardous substance into
or upon the navigable waters of the United States.  More specifically, the Plaintiffs' Complaint
alleges that ammonia-containing wastewater from certain facilities owned and/or operated by the
Settling Defendants was discharged into the Saline Branch Drainage Ditch and entered the Salt
Fork of the Vermillion River on July 11, 2002 (the "Discharge Incident").  The Complaint also
alleges that the Discharge Incident caused damage and destruction of natural resources --
including killing fish and invertebrates -- in approximately 9.9 miles of the Saline Branch
Drainage Ditch and in approximately 32.4 miles of the Salt Fork of the Vermillion River during
July 2002.  Finally, the Complaint alleges that the Plaintiffs have incurred and will incur costs
and expenses in responding to the Discharge Incident and in restoring or replacing the natural
resources that were damaged or destroyed by the Discharge Incident.

C.      Pursuant to Executive Order 12580 and the National Contingency Plan, 40 C.F.R.
Part 300, DOI, through the United States Fish and Wildlife Service ("FWS") has been delegated

authority to act as a Federal Trustee for natural resources impacted by the Discharge Incident. IDNR and IEPA have been delegated authority to act as the State Trustees for natural resources impacted by the Discharge Incident.

     D.    On September 23, 2002, the State filed a separate action in the Circuit Court for the Sixth Judicial Circuit in Champaign County, Illinois – captioned <u>People of the State of Illinois v. The Board of Trustees of the University of Illinois and Urbana & Champaign Sanitary District</u>, Case No. 02CH253 – seeking injunctive relief and civil penalties related to the Discharge Incident. The State and the Settling Defendants plan to resolve the claims asserted in that State Court action by a separate settlement in that State Court action.

     E.    On or before June 15, 2007, the Settling Defendants deposited the amount payable under this Consent Decree ($491,000), plus an additional sum, in an interest-bearing account maintained by the Urbana Champaign Sanitary District, in order to meet their payment obligations under this Consent Decree. Upon entry of this Decree, the amount payable under this Consent Decree, will be paid to the Plaintiffs as provided by Consent Decree Section VI (Payments by Settling Defendants). The remaining balance in that account, together with all accrued interest, is expected to be paid to the State for settlement of the separate State Court action.

     F.    By entry into this Consent Decree, the Settling Defendants do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint and deny the allegations in the Complaint.

     G.    The Parties to this Consent Decree recognize, and the Court by entering this Consent Decree finds, that this Consent Decree: (i) has been negotiated by the Parties in good faith; (ii) will avoid prolonged and complicated litigation among the Parties; (iii) will expedite

natural resource restoration actions to be performed by the Trustees; and (iv) is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and Sections 309(b) and 311(b)(10) of the Clean Water Act, 42 U.S.C. §§ 1319(b) and 1321(b)(10).  The Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying Complaint, the Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  The Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the Plaintiffs and upon the Settling Defendants and their, successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CWA Section 311(f), 33 U.S.C. § 1321(f), the National Contingency Plan, 40 C.F.R. Part 300, or the DOI Natural Resource Damage Assessment and Restoration Regulations, 43 C.F.R. Part 11, shall have the meaning assigned to them in CWA Section 311(f)

or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

a.     "Additional Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

b.     "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

c.     "Consent Decree" means this Consent Decree and all appendices attached hereto (listed in Section XIII (Appendices)).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d.     "CWA Section 311(f)" means Section 311(f) of the Clean Water Act, as amended, 33 U.S.C. § 1321(f).

e.     "Day" means a calendar day unless expressly stated to be a working day. "Working Day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

f.     "Discharge Incident" means the discharge of ammonia-containing wastewater from Outfall(s) 001, 002, and/or 003 of the Urbana Champaign Sanitary District's Northeast Sewage Treatment Plant into the Saline Branch Drainage Ditch and the Salt Fork of the Vermillion River on or about July 11, 2002.  Much of that ammonia-containing wastewater

-4-

was generated in connection with boiler cleaning operations performed at the University of Illinois' Abbott Power Plant. That wastewater was discharged to the Urbana Champaign Sanitary District's sewer collection system on July 11, 2002, it was directed to the Northeast Sewage Treatment Plant, and it was partially-treated and discharged into the Saline Branch Drainage Ditch.

   g. "DOI" means the United States Department of the Interior and any successor departments or agencies of the United States.

   h. "Effective Date" means the effective date of this Consent Decree as provided by Section XIV of this Consent Decree (Effective Date and Retention of Jurisdiction).

   i. "IDNR" means the Illinois Department of Natural Resources and any successor departments or agencies of the State.

   j. "IEPA" means the Illinois Environmental Protection Agency and any successor departments or agencies of the State.

   k. "Natural Resource" or "Natural Resources" means land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or the State.

   l. "Natural Resource Damages" means any damages recoverable by the United States or the State on behalf of the public, for injury to, destruction of, loss of, loss of use of, or impairment of Natural Resources resulting from the Discharge Incident, including, but not limited to: (i) the costs of assessing such injury, destruction, or loss or impairment arising from or relating to the Discharge Incident; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources or of acquisition of equivalent resources; (iii) the costs of

-5-

planning such restoration activities; (iv) compensation for injury, destruction, loss, loss of use, or impairment of natural resources; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15.

    m.    "NRDAR Fund" means DOI's Natural Resource Damage Assessment and Restoration Fund.

    n.    "Paragraph" means a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

    o.    "Parties" means the United States, the State, and the Settling Defendants.

    p.    "Plaintiffs" means the United States and the State.

    q.    "Removal Costs" means costs incurred by IEPA before the date of lodging of this Consent Decree for removal of a hazardous substance that was discharged or released during the Discharge Incident, other than costs falling within the definition of Natural Resource Damages

    r.    "Section" means a portion of this Consent Decree identified by a roman numeral.

    s.    "Settling Defendants" means: (i) the Board of Trustees of the University of Illinois; (ii) the Urbana Champaign Sanitary District; and (iii) CEDA, Inc.

    t.    "State" means the State of Illinois.

    u.    "Subparagraph" means a portion of this Consent Decree identified by a lower case letter or an arabic numeral in parentheses.

    v.    "United States" means the United States of America, including all of its departments, agencies, and instrumentalities.

-6-

w.      "Trustees" means DOI, IDNR, and IEPA.

## V. STATEMENT OF PURPOSE

4.      The mutual objectives of the Parties in entering into this Consent Decree are:
(i) to contribute to the restoration, replacement, or acquisition of the equivalent of the natural
resources allegedly injured, destroyed, or lost as a result of the Discharge Incident; (ii) to
reimburse natural resource damage assessment costs and certain other costs of removal incurred
by DOI, IDNR, and IEPA; (iii) to resolve the Settling Defendants' liability for Natural Resource
Damages as provided herein; and (iv) to avoid potentially costly and time-consuming litigation.

## VI. PAYMENTS BY THE SETTLING DEFENDANTS

5.      Payments for Assessment Costs and for Trustee-Sponsored Natural Resource
Restoration Projects.

a.      Payments for Assessment Costs Incurred by the United States and for
Trustee-Sponsored Natural Resource Restoration Projects.

(1)     Within 30 days after the Effective Date, the Settling Defendants
shall take all necessary actions to ensure that a total of $458,000 is paid to the United
States, from the account maintained by the Urbana Champaign Sanitary District, for
assessment costs incurred by the United States and for Trustee-sponsored natural resource
restoration projects.  Payment shall be made by FedWire Electronic Funds Transfer
("EFT") to the U.S. Department of Justice account in accordance with current EFT
procedures, referencing DOJ Case Number 90-11-3-08748.  Payment shall be made in
accordance with instructions provided to the Settling Defendants by the Financial
Litigation Unit of the United States Attorney's Office for the Central District of Illinois
following lodging of the Consent Decree.  Any payments received by the Department of

Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

(2)    Of the total amount to be paid by Settling Defendants pursuant to this Subparagraph 5.a:

(a)    $8,000 shall be deposited in the DOI NRDAR Fund, to be applied toward natural resource damage assessment costs incurred by DOI.

(b)    $450,000 shall be deposited in a segregated sub-account within the NRDAR Fund, to be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration projects in accordance with Section VII.

b.    <u>Payment for Assessment Costs Incurred by the State</u>.  Within 30 days after the Effective Date, the Settling Defendants shall take all necessary actions to ensure that a total of $33,000 is paid to the State, from the account maintained by the Urbana Champaign Sanitary District, for natural resource damage assessment costs incurred by IDNR.  That payment to IDNR shall be made by certified check made payable to the "Natural Resource Restoration Trust Fund" and sent to:

> Illinois Department of Natural Resources
> Office of Fiscal Management
> One Natural Resource Way
> Springfield, IL  62702-1271

6.    <u>Notice of Payment</u>.  Upon making any payment under Paragraph 5, Settling Defendants shall send written notice that payment has been made to:

For the United States:

Chief, Environmental Enforcement Section
U.S. Department of Justice
DJ # 90-11-3-08748
P.O. Box 7611
Washington, DC   20044-7611

Department of Interior
Natural Resource Damage Assessment and Restoration Program
Attn:  Restoration Fund Manager
1849 C Street, NW
Mailstop 4449
Washington, DC   20240

For the State:

James L. Morgan
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, IL   62706

Stanley Yonkauski
Legal Counsel
Illinois Department of Natural Resources
One Natural Resource Way
Springfield, IL  62702-1271

Michelle Ryan
Division of Legal Counsel
Illinois Environmental Protection Agency
1021 N. Grand Avenue East
P.O. Box 19276
Springfield, IL  62794-9276

7.   Non-Compliance with Payment Obligations.

a.   Additional Interest.  In the event any payment required by Paragraph 5 is not made when due, the Settling Defendants shall pay Additional Interest on the unpaid balance commencing on the payment due date and accruing through the date of full payment.

b.   Stipulated Damages.  In addition to the Additional Interest required to be

-9-

paid under the preceding Subparagraph, if any payment required by Paragraph 5 is not made when due, the Settling Defendants shall also pay stipulated damages of $500 per day through the date of full payment.

      c.     <u>Payment of Additional Interest and Stipulated Damages</u>.  Any Additional Interest payments under Subparagraph 7.a shall be paid in the same manner as the overdue principal amount, and shall be directed to the same fund or account as the overdue principal amount.  Any stipulated damages payments under Subparagraph 7.b shall be paid to the United States in accordance with payment instructions provided by the Financial Litigation Unit of the United States Attorney's Office for the Central District of Illinois, and shall be deposited in the United States Treasury.

## VII.  TRUSTEE-SPONSORED NATURAL RESOURCE RESTORATION PROJECTS

      8.     <u>Management and Application of Funds</u>.

      a.     <u>Use of Funds in General</u>.  All funds deposited in a segregated sub-account within the NRDAR Fund under Subparagraph 5.a.(2) shall be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration efforts in accordance with this Consent Decree.  All such funds shall be applied toward the costs of restoration, rehabilitation, or replacement of injured natural resources, and/or acquisition of equivalent resources.

      b.     <u>Trustees' Intent to Implement Specified Restoration Projects</u>.  Unless the Trustees act under Paragraph 9 to jointly select alternative uses of the $450,000 deposited in a segregated sub-account within the NRDAR Fund, the Trustees shall use such funds for projects that are designed to enhance fish habitat in the Saline Branch and Salt Fork of the Vermillion River, as more fully described in Appendix A to this Consent Decree.

9.    <u>Restoration Plan Addressing any Alternative Uses of Funds</u>.  If the Trustees propose to use funds dedicated for Trustee-sponsored natural resource restoration efforts under this Section for projects other than those described in Subparagraph 8.b and Appendix A, then the Trustees will prepare a separate Restoration Plan that identifies how the funds will be used for restoration, rehabilitation, replacement, or acquisition of equivalent resources.  The Plan may also identify how funds will be used to address services lost to the public until restoration, rehabilitation, replacement, and/or acquisition of equivalent resources is completed.

10.    Decisions regarding any use or expenditure of funds under this Section shall be made by the Trustees.  Settling Defendants shall not be entitled to dispute, in any forum or proceeding, any decision relating to use of funds or restoration efforts under this Section.

## VIII.  <u>COVENANTS NOT TO SUE BY THE PLAINTIFFS</u>

11.    <u>Covenant by the United States</u>.  Except as specifically provided by Paragraph 13 (General Reservations) and Paragraph 14 (Special Reservations for Unknown Conditions and New Information), the United States covenants not to sue the Settling Defendants for Natural Resource Damages resulting from the Discharge Incident pursuant to CWA Section 311(f), 33 U.S.C. § 1321(f), or CERCLA Section 107, 42 U.S.C. § 9607.  This covenant not to sue shall take effect upon receipt of the Settling Defendants' payments pursuant to Paragraph 5 of this Consent Decree.  This covenant not to sue is conditioned upon the satisfactory performance by the Settling Defendants of their obligations under this Consent Decree.  This covenant not to sue extends only to the Settling Defendants and does not extend to any other person; <u>provided, however</u> that this covenant not to sue (and the reservations thereto) shall also apply to Settling Defendants' officers, directors, employees, and agents, but only to the extent that the alleged liability of such person is based on acts and/or omissions which occurred in the scope of the

-11-

person's employment or capacity as an officer, director, employee, or agent of a Settling Defendant.

12.    <u>Covenant by the State</u>.  Except as specifically provided by Paragraph 13 (General Reservations) and Paragraph 14 (Special Reservations for Unknown Conditions and New Information), the State:  (i) covenants not to sue the Settling Defendants for Natural Resource Damages resulting from the Discharge Incident pursuant to CWA Section 311(f), 33 U.S.C. § 1321(f), CERCLA Section 107, 42 U.S.C. § 9607, or the Illinois Environmental Protection Act; and (ii) covenants not to sue the Settling Defendants for recovery of Removal Costs associated with the Discharge Incident pursuant to CWA Section 311(f), 33 U.S.C. § 1321(f), or CERCLA Section 107(a), 42 U.S.C. § 9607(a).  This covenant not to sue shall take effect upon receipt of the Settling Defendants' payments pursuant to Paragraph 5 of this Consent Decree. This covenant not to sue is conditioned upon the satisfactory performance by the Settling Defendants of their obligations under this Consent Decree.  This covenant not to sue extends only to the Settling Defendants and does not extend to any other person; <u>provided</u>, <u>however</u> that this covenant not to sue (and the reservations thereto) shall also apply to Settling Defendants' officers, directors, employees, and agents, but only to the extent that the alleged liability of such person is based on acts and/or omissions which occurred in the scope of the person's employment or capacity as an officer, director, employee, or agent of a Settling Defendant.

## IX. <u>RESERVATION OF RIGHTS BY PLAINTIFFS</u>

13.    <u>General Reservations</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against the Settling Defendants with respect to all matters not expressly included within Paragraph 11 (Covenants by the United States) and Paragraph 12 (Covenants by the State).  Notwithstanding any other provisions of this Consent

Decree, the United States and the State reserve all rights against the Settling Defendants with respect to:

a.      claims based on a failure by the Settling Defendants to meet a requirement of this Consent Decree;

b.      liability for injunctive relief or administrative order enforcement under CERCLA Section 106, 42 U.S.C. § 9606;

c.      liability for any other costs incurred or to be incurred by the United States that are not within the definition of Natural Resource Damages;

d.      liability for any other costs incurred or to be incurred by the State that are not within the definitions of Natural Resource Damages or Removal Costs;

e.      liability for damages for injury to, destruction of, or loss of natural resources resulting from releases or threatened releases of hazardous substances other than during the Discharge Incident;

f.      liability arising from any discharge or disposal of hazardous substances by any of the Settling Defendants after the lodging of this Consent Decree;

g.      liability for injunctive relief or civil penalties for violations of the Illinois Environmental Protection Act and regulations promulgated thereunder resulting from the Discharge Incident; and

h.      criminal liability.

14.     Reservations Regarding Unknown Conditions and New Information. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve the right to institute proceedings against the Settling Defendants in this action or in a new action seeking recovery of Natural Resource Damages, including costs of damages assessment,

based on: (i) conditions caused by the Discharge Incident, unknown to the Trustees as of the date of lodging of this Consent Decree, that result in releases of hazardous substances that contribute to injury to, destruction of, or loss of Natural Resources ("Unknown Conditions"); or (ii) information received by the Trustees after the date of lodging of this Consent Decree which indicates that the Discharge Incident has resulted in injury to, destruction of, or loss of Natural Resources of a type or future persistence that was unknown to the Trustees as of the date of lodging of this Consent Decree ("New Information"). For the purpose of this Paragraph: (i) an increase solely in the United States' or the State's assessment of the magnitude of a known injury to, destruction of, or loss of Natural Resources resulting from the Discharge Incident shall not be considered Unknown Conditions or New Information; and (ii) the information and conditions known to the United States and the State shall include any information or conditions listed or identified in records relating to the Discharge Incident that were in the possession or under the control of DOI, IDNR, or IEPA as of the date of lodging this Consent Decree.

## X. COVENANTS BY THE SETTLING DEFENDANTS

15.     Covenants by the Settling Defendants. The Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State, or their contractors or employees, with respect to the Discharge Incident, Natural Resource Damages, costs for removal of a hazardous substance that was discharged or released during the Discharge Incident, or this Consent Decree, including but not limited to:

            a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law; and

            b.      any claim against the United States or the State pursuant to Sections 107

-14-

and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, or Section 311(i) of the Clean Water Act, 33 U.S.C. § 1321(i).

16.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

17.    Waiver of Certain Claims Against Other Persons.  The Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have against all other persons for all matters relating to the Discharge Incident, including for contribution; provided, however, that the Settling Defendants reserve the right to assert and pursue all claims, causes of action, and defenses relating to the Discharge Incident against any person in the event such person first asserts, and for so long as such person pursues, any claim or cause of action against the Settling Defendant relating to the Discharge Incident.  Nothing in this Paragraph shall operate to waive or release any claim or action by a Settling Defendant under any contract of insurance.

## XI.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

18.    Except as provided in Paragraph 17 (Waiver of Certain Claims Against Other Persons), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.

19.    The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are Natural Resource Damages and the Removal Costs.

-15-

20.     The Settling Defendants also agrees that, with respect to any suit or claim for contribution brought against a Settling Defendant for matters related to this Consent Decree, the Settling Defendant will notify the persons identified in Section XII (Notices and Submissions) in writing within 10 days of service of the complaint or claim upon it.  In addition, the Settling Defendant shall notify the persons identified in Section XII (Notices and Submissions) within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

21.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, removal costs, or Natural Resource Damages, or other relief relating to the Discharge Incident, the Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants Not To Sue by the United States and the State set forth in Section VIII.

## XII.  NOTICES

22.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States and the State, and the Settling Defendant, respectively.

-16-

<u>As to the United States</u>:

    <u>As to the Department of Justice</u>:

    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice (DJ # 90-11-3-08748)

    P.O. Box 7611              601 D Street, N.W. – Room 2121
    Washington, D.C.  20044-7611    Washington, DC  20004

    (for U.S. Mail)               (for overnight delivery)

    <u>As to DOI</u>:

    Kelly B. Bakayza
    Office of the Solicitor
    U.S. Department of the Interior
    Three Parkway Center - Room 385
    Pittsburgh, PA  15220

    <u>As to the State</u>:

    James L. Morgan
    Assistant Attorney General
    500 South Second Street
    Springfield, IL 62706

    Stanley Yonkauski
    Legal Counsel
    Illinois Department of Natural Resources
    One Natural Resource Way
    Springfield, IL  62702-1271

    Michelle Ryan
    Division of Legal Counsel
    Illinois Environmental Protection Agency
    1021 N. Grand Avenue East
    P.O. Box 19276
    Springfield, IL  62794-9276

As to the Settling Defendants:

Richard Stock
Drinker Biddle Gardner Carton
191 N. Wacker Drive
Chicago, IL  60606-1698

*Counsel for the Board of Trustees of the University of Illinois
and the Urbana Champaign Sanitary District*

J. Chad Mitchell
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

*Counsel for CEDA, Inc.*

## XIII.  APPENDICES

23.     The following appendices are attached to and incorporated into this Consent Decree:  "Appendix A" is the Summary of Planned Habitat Improvement Projects.

## XIV.  EFFECTIVE DATE AND RETENTION OF JURISDICTION

24.     This Consent Decree shall take effect upon entry by the Court.

25.     The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XV.  CONSENT DECREE MODIFICATIONS

26.     Any material modification of this Consent Decree shall be made by agreement of the Parties to this Consent Decree and in writing, and shall not take effect unless approved by the Court.  Any non-material modification of this Consent Decree shall be made by agreement of the Parties to this Consent Decree and in writing, and shall not take effect until filed with the Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise,

-18-

or approve modifications to this Consent Decree.

27.   The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

28.   Economic hardship or changed financial circumstances of a Settling Defendant shall not serve as a basis for modifications of this Consent Decree.

## XVI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

29.   This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. The Settling Defendants consent to the entry of this Consent Decree without further notice. If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVII. SIGNATORIES/SERVICE

30.   The undersigned representatives of the Settling Defendants, the United States, and the State each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document. This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

31.   The Settling Defendants hereby agree not to oppose entry of this Consent Decree

-19-

by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer support entry of the Consent Decree.

32.     Each Settling Defendant shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of the Settling Defendant with respect to all matters arising under or relating to this Consent Decree. Each Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons. The Parties agree that the Settling Defendants need not file answers to the complaint in this action unless or until: (i) the United States has notified Settling Defendant in writing that it no longer supports entry of this Consent Decree; or (ii) the Court expressly declines to enter this Consent Decree.

## XVIII.  FINAL JUDGMENT

33.     This Consent Decree and its appendices constitute the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

34.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Defendants.  The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS __7th__ DAY OF __February, 2008__ , _____.


_____s/Michael P. McCuskey_____
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

FOR THE UNITED STATES OF AMERICA

Date: 2 October 2007

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: 10/2/2007

RANDALL M. STONE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC   20044-7611

RODGER A. HEATON
United States Attorney

Date: October 9, 2007

JAMES A. LEWIS
Civil Chief
Office of the United States United States Attorney
Central District of Illinois
318 S. Sixth Street
Springfield, IL   62701

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

FOR THE PEOPLE OF
THE STATE OF ILLINOIS
*ex rel.* LISA MADIGAN, Attorney General
of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/Asbestos Litigation
Division

Date: 7/09/07

THOMAS DAVIS, Chief
Environmental Bureau

FOR THE ILLINOIS DEPARTMENT OF
NATURAL RESOURCES

Date: _____

WILLIAM K. RICHARDSON
Chief General Counsel

FOR THE ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: _____

ROBERT A. MESSINA
Chief Legal Counsel

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of</u> <u>Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

FOR THE PEOPLE OF
THE STATE OF ILLINOIS
*ex rel.* LISA MADIGAN, Attorney General
of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/Asbestos Litigation
Division

Date: _____

THOMAS DAVIS, Chief
Environmental Bureau

FOR THE ILLINOIS DEPARTMENT OF
NATURAL RESOURCES

Date: 8/13/2007

WILLIAM K. RICHARDSON
Chief General Counsel

FOR THE ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: _____

ROBERT A. MESSINA
Chief Legal Counsel

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

FOR THE PEOPLE OF
THE STATE OF ILLINOIS
*ex rel.* LISA MADIGAN, Attorney General
of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/Asbestos Litigation
Division

Date: _____        _____
THOMAS DAVIS, Chief
Environmental Bureau

FOR THE ILLINOIS DEPARTMENT OF
NATURAL RESOURCES

Date: _____        _____
WILLIAM K. RICHARDSON
Chief General Counsel

FOR THE ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: __8/3/07__        _____
ROBERT A. MESSINA
Chief Legal Counsel

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

**THE BOARD OF TRUSTEES**
**UNIVERSITY OF ILLINOIS**

Date: _____

By: _____
Title:   Comptroller

By: _____
Title:   Secretary

8/14/07

APPROVED AS TO LEGAL FORM:

By: _____
Office of University Counsel
506 South Wright Street
Urbana, Illinois 61801

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name:   Richard M. Stock

Title:   Partner, Drinker Biddle Gardner Carton

Address:   191 North Wacker Drive

Suite 3700

Chicago, Illinois 60606

CHI01 12516005 1

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

**FOR THE URBANA CHAMPAIGN SANITARY DISTRICT**

Date: _8/2/2007_     _____

Typed Name: <u>Christopher Alix</u>

Title: <u>President, Board of Trustees</u>

Address: <u>Urbana Champaign Sanitary District</u>

<u>P.O. Box 669</u>

<u>Urbana, Illinois 61803-0669</u>

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name: <u>Richard M. Stock</u>

Title: <u>Partner, Drinker Biddle Gardner Carton</u>

Address: <u>191 North Wacker Drive</u>

<u>Suite 3700</u>

<u>Chicago, Illinois 60606</u>

CH01 2516004 1

THE UNDERSIGNED PARTY enters into this Consent Decree in <u>United States v. The Board of Trustees of the University of Illinois, et al.</u> (C.D. Ill.):

FOR CEDA, INC.

Date: 8/30/07

Signature

Typed Name:   Robert Schwictenberg

Title:            Manager - Ceda, Inc.

Address:        P.O. Box 49069

Minneapolis, MN 55449

Date: 8/31/07

Signature

Typed Name:   Greg Kraus

Title:            U.S. President - Ceda, Inc.

Address:        11355 Highway 225

LaPorte, TX  77571

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name:  J. Chad Mitchell

Title:            Partner, Kirkland & Ellis LLP

Address:        200 E. Randolph Drive
                Chicago, IL 60601

Consent Decree Appendix A:  Summary of Planned Habitat Improvement Projects

**Trustees' Summary of Planned Restoration Projects
for the July 2002 Salt Fork Fish Kill
Champaign County, Illinois**

## Introduction

The purpose of this summary is to describe the projects that the Trustees plan to implement to restore the natural resources that were injured or lost as the result of a fish kill that occurred in July 2002 in the Saline Branch and Salt Fork of the Vermilion River in Champaign County, Illinois.  The Trustees allege that the fish kill was caused by the un-permitted release of cleaning solutions containing high ammonia concentrations and related water quality problems.

The Trustees asserted damage claims against the responsible parties for the release of ammonia into the Salt Fork because natural resources under their trusteeship were injured or lost and the response actions did not restore them to the condition that existed prior to the release.  The Illinois Environmental Protection Agency, the Illinois Department of Natural Resources and the U.S. Fish and Wildlife Service are the Trustees for the injured natural resources in this case.  The injured natural resources included surface waters, aquatic life including fishes, and aquatic dependent wildlife such as migratory birds.

The Trustees plan to use the $450,000.00 settlement amount that is to be paid under the Consent Decree to implement restoration projects that would be designed to enhance habitat quality and improve water quality in the Saline Branch and Salt Fork of the Vermilion River.  The projects are expected to involve installation of specially-constructed rock structures or features (i.e., j-vanes and riffle structures).  Installation of those in-stream structures would enhance the quality of the existing habitat in a number of ways, including creating pool habitat and providing refuge and interstitial spaces for insects, small fish, and macroinvertebrates.  The structures also would improve water quality by dissipating current energy, stabilizing streambanks, increasing aeration, and adding substrate to the channel.

The following sections of this summary provide a more complete description of the project area, a more detailed description of the planned restoration projects, and a description of the expected benefits of the projects.

## Description of the Project Area

The Salt Fork is a tributary of the Vermilion River (a Wabash River tributary) located in Illinois.  The Vermilion River lies over a buried bedrock valley and is formed by the confluence of the Middle Fork and the Salt Fork near Catlin, Illinois.  The Vermilion enters the Wabash River near Cayuga, Indiana.  The Salt Fork originates in Champaign County, is roughly 71 miles in length,

and has a drainage area of 506 square miles. The Saline Branch is a tributary of the Salt Fork.

The Salt Fork of the Vermilion River supports a warm water fishery. The dominant fish species include minnows, darters, suckers, and bass species. Other natural resources in the area include aquatic vegetation, macroinvertebrates, mammals, birds, amphibians, and reptiles. The stream, shoreline, and floodplain provide cover and forage resources for aquatic and wetland dependent wildlife and migratory birds. The Salt Fork is a Class B stream, a highly valued aquatic resource based on its Biological Stream Characterization (BSC). The BSC is a stream-quality index used to categorize streams and is based largely on fish populations, water quality and aquatic invertebrates. Areas of Salt Fork are recognized as areas of high mussel species richness and abundance with rare species present and moderate to very high recruitment.

There are state-listed species in the Vermilion River system: the state-threatened purple wartyback, eastern sand darter, river redhorse, and Iowa darter and the state-endangered bigeye shiner, wavy-rayed lampmussel, rainbow, northern madtom, big-eye chub, and bluebreast darter. The federally listed species in the Vermilion River system include the endangered Indiana bat, threatened bald eagle, and the endangered clubshell mussel.

The project area contains riverine and associated grassy or forested floodplain. Soils in the area consist of post settlement alluvial material deposits overlaying pre-settlement alluvium of the floodplain. The surrounding area is used primarily for agriculture, including for livestock. The Edgewood Farms Land and Water Reserve is located along the impacted stretch. Middle Fork State Fish and Wildlife Area is located northeast of the upper limit of the injury resulting from the ammonia release. The Champaign County Forest Preserve owns and manages property in the Vermilion River watershed.

## Description of the Planned Restoration Projects:  In-Stream Restoration by Installation of J-Vanes and Rock Riffles

J-vanes are features constructed out of rocks and placed starting at the shoreline out into channel at an angle from the shoreline. They help deflect the energy of the flowing water into the mid part of the channel and away from the shoreline. This reduces erosion of the stream bank. Typically, a series or groups of series of j-vanes are used along the eroding shorelines. The rock structures collect sediment above the j-vane and scour sediments below the j-vane thus creating a small pool. A small amount of stream bank soil may be removed to insert the rocks closest to the shoreline. Any spoil is spread out thin in the far reaches of the floodplain over low grade grassy openings and replanted with native grasses and forbs.

Riffle structures are features constructed out of rocks and placed on the substrate across the channel. The width and height of the rock structure is dependent on the channel dimensions and flow regimes. Riffle structures help deflect energy off of eroding substrates. This reduces erosion of the stream channel. The rock structure collect sediment in the riffles and scour sediments below the riffle thus creating a pool.

2

## Description of the Expected Benefits of the Projects

The projects are expected to benefit the stream's aquatic life over the long term by stabilizing the channel, reducing erosion into the floodplain, reducing sedimentation, and improving water quality. The features will create scour holes and deeper pool habitat. The rock structures will provide flow refugia and interstitial spaces for the production of insects, small fish and other benthic macroinvertebrates. The rock structures will divert and dissipate current energy away from eroding shorelines or stream banks. These features will also increase aeration for better dissolved oxygen concentrations and add more substrate to the channel.

Other stream fauna such as reptiles, amphibians, riparian mammals, aquatic and wetland dependent migratory birds will benefit in the long term from the reduced sedimentation and habitat stability from controlling erosion problems.

There will be benefits to the listed endangered or threatened aquatic species, aquatic dependent wildlife species or wetland dependent wildlife species related to the enhancement of stream habitat and water quality improvements. Better stream habitat and water quality conditions increase the diversity and production of forage resources for the listed species.

The projects will have positive effects on native habitats due to the long term protection and stabilization of the stream and floodplain by reducing erosion. The projects may actually improve drainage by keeping excess sediment deposits out of the stream channel.

The Trustees will avoid or mitigate potentially-adverse incidental effects of the planned projects. More specifically:

- There may be short term impacts to the stream's aquatic life as the shoreline or substrate is disturbed during the construction. This impact would be minimized to an acceptable level by following the prescriptions to protect water quality in the Clean Water Act Section 404 Nationwide Permit and other State permit instructions that will be applied for this project. These prescriptions were designed to eliminate or greatly reduce the input of sediments in the waterbody.

- Projects will not be placed in mussel beds (as determined by a qualified professional). Individual mussels not part of a bed will be relocated out of the construction footprint into a safe and suitable area if any are encountered.

- The projects will be designed to avoid causing any additional artificial increase of the natural level of surface water or groundwater.

- There should be no impacts on historical resources, because projects will not be undertaken at old farmstead or town building sites as determined by review of the historical plat maps. Similarly, there is a low likelihood that the projects would disturb archeological objects or human remains because the projects are only located in post-settlement alluvium or late pre-settlement alluvium which tend not

3

to contain prehistoric resources. Once exact project sites are located, trained staff will examine the State cultural resource site records database, historical plat maps, and atlases to avoid known cultural resource areas.

## Conclusion

The Trustees believe that the planned projects will achieve effective in-stream habitat restoration that will benefit natural resources in the Saline Branch and Salt Fork of the Vermilion River, especially natural resources that were injured or harmed as a result of the fish kill.

4